# FOR PUBLICATION



FILED
Aug 29 2014, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD DEWAYNE THOMPSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1401-CR-8 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1301-FA-2

**August 29, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Ronald Dewayne Thompson appeals his convictions for Rape,[1] a class A felony, and Criminal Deviate Conduct,[2] a class B felony. More particularly, Thompson contends that the trial court erred when it admitted evidence that Thompson was a suspect in another sexual assault case. Additionally, Thompson argues that the State's request to introduce evidence under Indiana Evidence Rule 404(b) did not provide reasonable notice as required by that rule and lack of such notice was not excused for good cause. Finding that the evidence was inadmissible under Evidence Rule 404(b) and that it was prejudicial, we reverse and remand for a new trial.

## FACTS

On August 18, 2012, T.H. traveled from Elkhart, Indiana, to Gary, Indiana. T.H. had just finished her CNA[3] program and was going to Gary to celebrate with her nephew Ramon and his girlfriend. To arrive in Gary, she took a trolley, a bus, and the South Shore train. However, when T.H. got off the trolley, she ran into her nephew James. She stopped to talk to him about her CNA certificate. She had a drink of vodka with James, and then continued on a bus to the South Shore train. While on the bus, she drank a tall can of beer she had brought with her in her purse.

After 6:00 pm, T.H. arrived in Gary. She took a bus to 21st street and Broadway and then began walking on Broadway, looking for a bus that would take her to Ramon's

---

[1] Ind. Code § 35-42-4-1(a)(1)

[2] I.C. § 35-42-4-2(a)(1)

[3] The record does not indicate what T.H.'s CNA program was, but it is likely that it was a certified nursing assistant program.

2

house.  Before she found a bus, T.H. ran into Thompson, who introduced himself as Michael and asked T.H. if she needed a ride.  T.H. told him that, if he would get her safely to Ramon's home, she would like a ride.  She got into his white minivan.

T.H. did not have any money, and she offered Thompson her electronic benefits (EBT) card, telling him he could make a purchase with it if he liked.  They then went to a service station on Broadway, where Thompson went into the building with T.H.'s EBT card, but he returned to the van empty-handed.  He then drove to another store, where he purchased orange juice.  He and T.H. each drank some gin from a bottle.  At this point, Thompson told T.H. he needed to "run out to [his] job real quick."  Tr. p. 64.

Thompson drove to Merrillville, where he took T.H. inside a building.  Once she entered the building, T.H. noticed that it was completely empty except for carpeting and a chart on the wall.  Worried, she attempted to leave.  Thompson would not allow her to leave and blocked her exit.  He grabbed T.H.'s hair, and T.H. said "no."  Id. at 69.

T.H. tried to leave once more, but Thompson grabbed her clothes, put his hands around her neck, and pushed her against the wall.  T.H. pretended to collapse, because Thompson was choking her hard, and she wanted to "get away from the choking."  Id. While T.H. was lying on the floor, Thompson kicked her in the side approximately five times and stomped on her chest three times.  T.H. then began to cry.

When T.H. opened her eyes and looked at Thompson, she saw that he had pushed his pants and underwear down to his ankles.  He told her to take off her clothes and get on her knees.  Thompson then ordered T.H. to perform fellatio on him.  When T.H.

3

complied, Thompson said that she was not doing it "correctly," and hit her in the head several times. Id. at 72. Thompson then pushed T.H. back on the carpet, forced her to open her legs, and inserted his penis into her vagina. Thompson then asked T.H. to put her clothes back on and told her he would take her to her nephew's house.

T.H. and Thompson left the building and got into Thompson's van. When they had travelled a little way down the road, they saw a police officer directing traffic. When the vehicle came to a stop, T.H. jumped out and yelled to the officer that she had been raped. Thompson drove away.

More police and an ambulance arrived, and T.H. was taken to the hospital, where she stayed for three days. While T.H. was in the hospital, a sexual assault nurse examiner performed an examination for sexual assault.

Merrillville Police Detective Ray Smith was able to find a suspect in the case by conferring with Detective George Fields, who was investigating a similar assault and battery case. That assault occurred in a similar location, involved a vehicle similar to the one used by Thompson, and the description of the suspect was similar to the description T.H. had given of Thompson. Based on the information gleaned from Detective Fields, a photo array was developed and shown to T.H. From the photo array, T.H. identified Thompson as her attacker.

A buccal swab was collected from Thompson. The DNA profile from the sperm cell fraction obtained from the rape kit collected from T.H. matched Thompson.

4

On January 29, 2013, the State charged Thompson with Count I, rape as a class A felony; Count II, criminal deviate conduct as a class A felony; Count III, robbery resulting in serious bodily injury as a class A felony; Count IV, criminal confinement as a class B felony; and Count V, battery resulting in serious bodily injury as a class C felony. Thompson's jury trial took place on November 18, 19, and 22, 2013.

In his opening statement, counsel for Thompson stated that:

> [T.H.] went out partying that night. That's what happened in this case. She was out partying. After things happened, [T.H.} decided, "you know what, this isn't what I wanted to happen. I wanted to come here, but this isn't what I wanted to happen, so now I'm going to claim that I was raped, that I was beaten. That's what I'm going to do, because I made some poor decisions earlier in the evening, now I'm going to say I was raped."

Id. at 47. Likewise, during closing argument, Thompson's counsel stated: "we're not disputing that Mr. Thompson and [T.H.] engaged in sexual intercourse at or around the time that she says she was assaulted . . . ." Id. at 411.

During the State's case, the prosecutor argued for the admission of evidence under Evidence Rule 404(b). The evidence regarded "how [Thompson] was developed as a suspect in this case, and that is that based upon the similarities – that is the similarities of the crime and the location involving him and [another] case that has previously been tried," and showed that Detective Smith "had reason to believe there may be some relation between him and this instant case, and that was the motive to go on the 17th of January to question him about – about this particular case." Id. at 338-339. The State argued that this evidence should be admissible to show identity and intent, citing the

5

similarities between the sexual assaults: the proximity of the crime scenes, the description of the vehicle used, and the description of the suspect. The trial court admitted the testimony of Detective Smith, in which he explained that he was able to link Thompson to the rape of T.H. because Thompson was also a suspect in another sexual assault.

Detective Smith testified that he had been able to locate Thompson as a suspect when he spoke with Detective George Fields and discovered that there were similarities between his sexual assault case and a sexual assault case Detective Fields was investigating. He testified that the similarities were "the proximity of the crime scene, the description of the vehicle in both cases, and the description of the suspect." Id. at 353. He also testified that Thompson was the individual who was identified and charged in Detective Fields's case. Id. at 355.

At the close of the State's arguments, the trial court entered a judgment of acquittal on count III robbery resulting in serious bodily injury. The jury found Thompson guilty as charged on the remaining counts. The trial court merged Count V into Count I and also merged Count IV into Count II.

On December 20, 2013, the trial court sentenced Thompson to forty years on Count I and to twenty years on Count II, to be served consecutively for an aggregate sentence of sixty years.

Thompson now appeals.

Thompson argues that the trial court erred in admitting the testimony of Detective Smith that Thompson was also a suspect in another sexual assault case. More particularly, Thompson maintains that the evidence in question was admitted in violation of Evidence Rule 404(b), as it does not fall under the identity or intent exceptions cited by the State.[4]

A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion. Sparkman v. State, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. Id. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury. Sparkman, 722 N.E.2d at 1262.

Indiana Evidence Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Evidence Rule 404(b) allows the introduction of evidence of other crimes and wrongs for

---

[4] Thompson also argues that the State failed to provide reasonable notice of its intent to use evidence under Evidence Rule 404(b). However, as we find that the evidence was inadmissible, we need not address Thompson's notice argument.

purposes other than proving propensity to commit the charged crime, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To be admissible under Evidence Rule 404(b), the evidence must be relevant to some matter other than the defendant's propensity to commit crimes and the prejudicial effect of the evidence must not substantially outweigh its probative value pursuant to Indiana Evidence Rule 403. Berry v. State, 715 N.E.2d 864, 867 (Ind. 1999).

The State argues that Detective Smith's testimony regarding Thompson's status as a suspect in another sexual assault was admissible because it showed identity and modus operandi. It contends that the similarities between the two sexual assaults–the location of the assaults, the description of the vehicle, and the description of the perpetrator–were sufficient to establish modus operandi.

The identity exception in Rule 404(b) was crafted primarily for crimes so nearly identical that the modus operandi is virtually a "signature." Thompson v. State, 690 N.E.2d 224, 234 (Ind. 1997). "The exception's rationale is that the crimes, or means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them." Id. The analysis of admissibility under Rule 404(b) incorporates the relevancy test of Rule 401 and the balancing test of Rule 403. Allen v. State, 720 N.E.2d 707, 711 (Ind. 1999).

In Lafayette v. State, our Supreme Court found that evidence of prior bad acts was not admissible for the purposes of showing identity or modus operandi when the defendant had admitted he had engaged in sexual intercourse with the victim. The

8

defendant's "identity was not in issue once he admitted that he had engaged in sexual intercourse with C.E." 917 N.E.2d 660 n. 6 (Ind. 2009).

Here, Thompson did not contest that he had engaged in sexual intercourse with T.H. Tr. p. 411. Rather, he argued that T.H. had consented to sexual intercourse with him. Therefore, identity was no longer at issue and the evidence of prior bad acts was not admissible to show modus operandi.

The State also argues that evidence of the prior bad act was admissible to show intent under Evidence Rule 404(b). It contends that Thompson asserted a contrary intent when he stated that T.H. had consented to sexual intercourse.

The intent exception under Evidence Rule 404(b) is available when a defendant goes beyond merely denying the charged culpability and alleges a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation in the defendant's own case-in-chief. Wickizer v. State, 626 N.E.2d 795, 799 (Ind. 1993). The State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offenses. Id. The trial court must then determine whether to admit or exclude such evidence depending upon whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

However, contrary intent does not apply in the instant case. In <u>Lafayette</u>, our Supreme Court determined that "a defendant's assertions that an alleged rape victim consented to sexual intercourse does not present a claim of particular contrary intent for purposes of triggering the intent exception to Evid. R. 404(b)." 917 N.E.2d at 666. Rather, when the defendant alleges consent, the issue becomes one of the victim's consent, not one of contrary intent on the part of the defendant. <u>Id.</u>

Here, Thompson admitted to having sexual intercourse with T.H. and asserted that she consented. Therefore, the issue became whether T.H. consented, and contrary intent is not applicable. The evidence relating to Thompson's involvement in a prior sexual assault was not admissible.

"[I]n some instances the erroneous admission of evidence is harmless. Errors in the admission of evidence will not result in reversal if the probable impact of the evidence upon the jury is sufficiently minor so as to not affect a party's substantial rights." <u>Collins v. State</u>, 826 N.E.2d 671, 679 (Ind. Ct. App. 2005).

Here, the jury heard evidence suggesting that Thompson had sexually assaulted another woman. Thompson asserted that he had consensual sexual intercourse with T.H., while T.H. asserted that she had not consented. Therefore, the determination of Thompson's guilt hinged solely on the credibility of T.H. In light of these circumstances, we find it likely that Detective Smith's testimony had a prejudicial impact on the jury and contributed to the guilty verdict.

10

We reverse Thompson's convictions and remand for a new trial.

KIRSCH, J., and ROBB, J., concur.