VAIDIK, Chief Judge,
dissenting in part, concurring in part.
I respectfully disagree with the majority’s decision to reverse Hall’s Class A felony child-molesting conviction. First, I agree with the majority that the trial court properly excluded the evidence of M.T.’s reputation for untruthfulness in her community and that the trial court should have granted Hall’s motion to compel A.D. to answer the deposition question about M.T.’s alleged prior false allegation of sexual misconduct with a boy in Kentucky. However, I disagree that the contents of *1122 A.D.’s entire phone call with Hall should be admitted. In any event, I believe that any error by the trial court in excluding the phone call was harmless and would therefore affirm Hall’s conviction for Class A felony child molesting.
The record shows the following evidence supporting Hall’s conviction for Class A felony child molesting:
• M.T. testified that Hall rubbed his penis on the crotch area of her shorts and then had sexual intercourse with her on his bed.
• Twelve-year-old M.T. reported the incident that same day.
• M.T. went to the hospital and was examined by a sexual-assault nurse.
• During the vaginal exam, the nurse found three “fresh” lacerations that were consistent with penetration.
• Hall’s seminal material was found on the crotch of M.T.’s shorts.
• Hall admitted that he was in bed with M.T. at the relevant time, but he said he woke up to M.T. touching his penis.
• Once Hall was charged in this case, he was a fugitive for three months and even left the state.
After the molestation, Hall called A.D. on the phone to go over information he could use to attack M.T.’s credibility, specifically information about M.T.’s alleged prior false allegation of sexual misconduct with a boy in Kentucky. Hall was vaguely familiar with the incident because of his relationship with A.D., but he wanted more details from A.D. The phone call contained some information about the Kentucky incident. Expanding on this inquiry, defense counsel, during A.D.’s deposition, asked her a question about the Kentucky incident, but A.D. refused to answer the question. Defense counsel asked the trial court to compel A.D. to answer the question, but the trial court denied counsel’s motion.
At trial, the following colloquy occurred between defense counsel and A.D. regarding Hall’s phone call to A.D.:
Q And when you were asked about a conversation you had with Mr. Hall when he wanted you to help clear his name, do you recall talking about that? Did you actually give him information?
A Did I physically give him anything? No.
Q No, did you — because you were having a conversation. Did you give him any information?
Tr. p. 196-97. At this point, the State objected on hearsay grounds. The trial court instructed A.D. that she could not give the substance of her conversation with Hall, but she could answer yes or no. So the questioning continued as follows:
Q When Mr. Hall was talking to you about clearing his name, did you give him any information?
A Did I give him an[y] information— he asked me—
******
A —for the information
THE COURT: Not what that information was. The question was did you give him any information based on his request for it.
A His request, no. I didn’t give him any information.
THE COURT: Alright.
Q Is it your testimony today that that conversation was one and done request, hang up?
A I’m sorry?
Q Is it your testimony here today that that conversation where he wanted to clear his name was one and done, he made a request and you gave him no *1123 information and that was the end of the conversation?
A He asked me questions. He — he basically said give me information—
Id. at 198-99 (emphasis added). At this point, the trial court excused the jury and reminded A.D. not to violate the court’s order in limine, which prohibited the witnesses from testifying about, among other things, any sexual history of M.T. or uncharged prior acts or bad acts of M.T. Id. at 200-02; see also Appellant’s App. p. 149-51 (“Any questions, testimony, evidence, argument, or comments regarding prior sexual conduct of any State’s witness, including but not limited to [M.T.]. I.R.E. 412.”). Again, the court told A.D. that she could answer defense counsel’s question with a “yes” or “no”; however, she could not expand on what was said during the phone call with Hall. Tr. p. 202. The court said that regardless of A.D.’s answer, defense counsel could not “kick [his] own door open” to impeach A.D. with the substance of the phone call, which included the Kentucky incident. Id. at 208. The court then excused A.D. from the courtroom in order to listen to the phone call.
The trial court acknowledged that the phone call might impeach A.D.; however, the court warned defense counsel that the phone call might also hurt Hall in the process because Hall called the victim’s mother and asked her, “hey, how can we essentially tear down the credibility of a twelve year old girl.” Id. at 210, 211. Before taking a break so that defense counsel could make a decision, the trial court told defense counsel what its ruling would be:
I can tell you this: The phone call as it is, the whole phone call, my ruling is going to be that it can’t come in. If you want to redact part of that phone call I’ve shown you where it can be redacted to. That’s it.
Id. at 218. The court elaborated that it would play the phone call up to the thirty-fourth second, which was before A.D. and Hall discussed the Kentucky incident. Id. at 220. After defense counsel deliberated with each other, they decided not to ask A.D. the question again. Id.
However, the issue of the phone call resurfaced during .the State’s re-cross-examination of Hall:
Q [C]orrect me if I’m' wrong, you asked A.D. to give you anything in which you could attack the twelve year old’s credibility with, is that right?
A She had already told me—
Q Hold on, Mr. Hall. I asked you a specific question, yes or no.
A I asked her to give me what she gave me.
Q I — you asked her—
A Tell me what you told me, that’s what I—
Q You asked her to give you whatever you needed to attack the twelve year old’s credibility, isn’t that right, yes or no, Mr. Hall? Remember the Court’s order, yes or no.
A Yes.
Q Thank you, Mr. Hall.
A You welcome.
Q And only after you retained your attorney and gotten your little portfolio together and returned to Indiana, only then did you present yourself to this Court.
A I never got a portfolio ready.
Q Okay. But only then you presented yourself to this Court, is that right?
A Only — nope, it was more things before that. Would you like to know those things?
*1124 Q Mr. Hall, I’m the one asking the questions but I am finished, thank you.
Id. at 593. When defense counsel attempted to ask Hall a question on re-redirect about the phone call when Hall asked A.D. to “give [him] back information” about M.T., id. at 594 (emphasis added), the State objected, and a sidebar conference was held. Although most of the conference is unintelligible, it appears that defense counsel believed that his line of questioning was permissible because Hall “said give back [the information] and [there’s] a difference between give first or ... get information again.” Id. at 594-95 (emphasis added). The State disagreed, believing that the distinction did not matter. See id. at 595 (“Except if [Hall] had [the information about M.T.] already why would he need it again. That’s absurd.”). The trial court sustained the State’s objection as outside the scope of the State’s question and going too close to the court’s order in limine. Id.
The majority reverses Hall’s conviction solely because of the trial court’s exclusion of the phone call.[14] The majority finds that the State’s re-cross-examination of Hall opened the door to the admissibility of the entire phone call, including the Kentucky incident, because it “insinuated that [Hall] had no basis for asking A.D. questions about M.T.’s credibility, that he had a bad motive in asking those questions, and that his request for information was for naught, all of which was untrue.” Op. at 1113-14. However, the majority overestimates the value of the phone call and its possible impact on the verdict. Defense counsel argued at trial that the value of the phone call was to show that Hall had a basis for asking A.D. the questions because he had learned certain information about M.T. from A.D. before the phone call.[15] I agree with the State that the distinction of whether Hall heard this information first during the phone call or earlier is a distinction without a difference and certainly not reversible error given the overwhelming evidence in the case.
What is left unwritten in the majority’s opinion, at least explicitly, is its concern that the trial court excluded evidence that (1) M.T. made a prior false allegation of sexual misconduct and (2) M.T.’s mother, at least on the occasion of the telephone conversation to her then-boyfriend, Hall, said that at some unspecified time M.T. used a dildo.
With regard to the alleged prior false allegation of sexual misconduct with the boy in Kentucky, I agree with the majority that the trial court should have allowed defense counsel to ask A.D. about this allegation during A.D.’s deposition. But it did not and, in any event, the error was harmless. At trial, the prosecutor, as an officer of the court, explained that when A.D. and M.T. lived in Kentucky with A.D.’s friend and M.T. was nine years old, A.D.’s friend asked M.T. if she had ever *1125 been touched, and M.T. said yes, which undisputedly she had. A.D.’s friend alerted the Kentucky equivalent of the Department of Child Services, M.T. was interviewed, and it was learned that it was mutual touching. During trial, defense counsel had an opportunity to ask A.D. questions to establish his offer of proof, but he did not. As such, he has waived this issue. Besides, if there is fire to this smoke, undoubtedly it will be the subject of post-conviction relief, in particular Post-Conviction Rule 1(a)(4), which allows relief if there exists “evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.” We should not jump to the conclusion that this incident is admissible. Making young M.T. endure another trial before knowing if this qualifies as an admissible false allegation under the Rape Shield Statute is unnecessary.
The same is true about ,M.T.’s alleged use of a dildo. First, I note that Hall did not pursue any information about this through the discovery process and never made an allegation throughout the entire underlying proceedings or on appeal that there was anything to this allegation. Yet sprinkled throughout the majority’s' opinion are references to the mother’s comment in the telephone conversation, the forensic nurse’s comment that the “fresh” lacerations were only “consistent with” sexual intércourse (as if a nurse or doctor could testify to anything other than that lacerations were consistent with intercourse), and defense counsel’s cross-examination question to the nurse as to whether the “fresh” lacerations could have been self-inflicted, which are then turned into enough doubt to find that the evidence here is not overwhelming. Importantly, there is nothing in the record, other than what has been ad nauseam described in the phone call, to confirm any use of a dildo by M.T. or when, where, or what kind was allegedly used. And most importantly, Hall never argues on appeal that he was denied the opportunity to question about this nor that this should have been admitted as evidence of an exception to the Rape Shield Statute. Inexplicably, however, the majority in footnote 8 explains extensively that on retrial this unknown incidents) may be admissible under the Rape Shield Statute.
Reading between the lines here, this reversal is not about whether a false impression was created concerning whether Hall in his phone call for the first time or second time askéd A.D. about M.T.’s past. The State did not make any argument about the phone call during its closing argument. Instead, this reversal is about smoke with no fire in the midst of overwhelming evidence of Hall’s guilt.[16] If there is fire, our criminal-justice system provides a remedy through post-conviction relief.

. I agree with the majority’s conclusion that the trial court properly excluded the evidence of M.T.'s reputation for untruthfulness in her community because the community was too small.

. The majority states that defense counsel argued at trial that the phone call was to impeach A.D. I read the record differently. During cross-examination of the mother, defense counsel attempted to admit the phone call. However, after the trial-court judge warned counsel that admission of the phone call might make matters worse for the defense, defense counsel reconsidered and did not pursue his objection. This matter came to a head again during the re-redirect of Hall. At this time, defense counsel preserved its objection, citing the reason for the admission of the phone call was to show that Hall knew this information before he called A.D. that day.

. The majority cites this Court’s recent opinion in Thompson v. State, 15 N.E.3d 1097, 2014 WL 4258769, No. 45A03-1401-CR-8, slip op. at 10 (Ind.Ct.App. Aug.29, 2014), for the proposition that Hall’s defense depended entirely on the jury crediting his version of events over M.T.’s. Here, however, there was other evidence to support M.T.’s story: Hall’s seminal material was found on the crotch of M.T.’s shorts, M.T. had three "fresh” lacerations,. Hall admitted that he was in bed with M.T. and that she touched his penis, and Hall was a fugitive for three months.