

**FILED**

Aug 31 2015, 8:28 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Lamar Caldwell, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 31, 2015 <br><br> Court of Appeals Case No. <br> 22A01-1411-CR-479 <br><br> Appeal from the Floyd Superior Court <br><br> The Honorable Susan L. Orth, Judge <br><br> Trial Court Cause No. <br> 22D01-0712-FA-858 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Indiana Evidence Rule 404(b) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

However, the evidence may be admissible for another purpose, such as proving identity. The identity exception was crafted primarily for "signature" crimes with a common modus operandi. The exception's rationale is that the crimes, or the means used to commit them, are so similar and unique that it is highly probable that the same person committed all of them. Crimes that are only "generally similar" do not qualify under this exception; rather, the crimes must be "strikingly similar."

[2] Anthony Lamar Caldwell was charged with Class A felony burglary and Class A felony attempted rape for breaking into a woman's house, badly beating her, and attempting to rape her. At trial, the State introduced evidence that Caldwell looked in the window at another woman's house—which was in the same neighborhood—fifty-seven days later. The trial court admitted this evidence under the identity exception in Evidence Rule 404(b) because it found that the second crime was "sufficiently similar" to the first crime and the crimes demonstrated Caldwell's "signature." The jury found Caldwell guilty as charged, and the trial court sentenced him to an aggregate term of 100 years.

[3] Although there are general similarities between the crimes, we find that the similarities are not striking, primarily because the second incident did not involve an entry into the woman's house or a sexual assault. Because they are not signature crimes, we conclude that the trial court abused its discretion in admitting evidence of the second crime. Nevertheless, we find that the error is harmless in light of the fact that Caldwell's DNA was found at the scene of the first crime and the jury was admonished to consider the second crime for

identification purposes only. In addition, because the enhancements to Caldwell's burglary and attempted-rape convictions violate the common-law prohibition against double jeopardy, we reduce Caldwell's burglary conviction from a Class A felony to a Class B felony, thereby resulting in a new aggregate sentence of seventy years.

# Facts and Procedural History

[4] On July 21, 2003, fifty-six-year-old L.C. lived alone at 1770 Lynwood Drive in New Albany, Indiana. That night, L.C. went to bed around 9:45 p.m. Her laundry-room window, which did not have a screen, was closed at the time. While she was in bed, L.C. heard a noise coming from the laundry room. L.C. got out of bed, put on her robe, and walked down the hall, turning on the light. As L.C. rounded the corner into the living room, a man stepped out and grabbed her. According to L.C., the man wore a light-blue t-shirt, a brown belt, and blue jeans; was about 5'10" to 6' tall; weighed about 175 pounds; and was about twenty-five to thirty years old. However, L.C. was unable to see the man's face or ascertain his race, and she was never able to identify him. Tr. p. 525, 527-28, 537, 547.

[5] After the man grabbed L.C., he pulled her robe over her head and started pushing her back toward the bedroom. During this process, the man hit L.C. in the face with his fists. When L.C. tried to cover her face with her hands and screamed, the man hit her harder. He also ripped off her underwear. Once they got to the base of the bed in L.C.'s bedroom, the man hit her so hard that

she briefly lost consciousness and fell to the floor. The next thing L.C. remembered was the man putting a bed pillow over her face. L.C., who thought she was going to die, struggled to push the pillow away. When the man touched the outside of L.C.'s vagina with his hand, she exclaimed, "Jesus, Jesus." *Id.* at 132. The man then abruptly ended the attack and left.

[6] L.C. called 911 at 10:14 p.m. An ambulance took L.C. to Floyd Memorial Hospital, where she was hospitalized for two days. She had a broken eye socket, a laceration below her right eye, and broken bones in her left hand and fingers. She also had significant bruising and swelling in her face. *See* State's Ex. 6, 7.

[7] Responding officers determined that the perpetrator had entered L.C.'s house through the laundry-room window. There were no other signs of forced entry. Officers discovered blood on the blinds covering the laundry-room window, and an evidence technician took a swab of the blood for DNA testing. Officers also discovered mud on the wall below the laundry-room window, blood on a bed pillow and the carpet, and torn underwear. Nothing had been taken from the house.

[8] Over four years later, in November 2007, the DNA from the blood on the laundry-room blinds matched Caldwell's profile in the National DNA Database. As a result of the match, in December 2007 the State charged Caldwell with Count I: Class A felony burglary (bodily injury) and Count II:

Class A felony attempted rape (deadly force),[1] and the trial court issued a warrant for his arrest. Caldwell, however, was not arrested until six years later in December 2013. *See* Appellant's App. p. 2.

[9] Before trial, the State filed a notice of intent to present evidence regarding "[a] traffic stop of Anthony Caldwell on September 17, 2003[2] at or near 3309 Mellwood Avenue, New Albany, Indiana and investigation into Caldwell attempting to look into a window at 3309 Mellwood Avenue." *Id.* at 40. The State claimed that this evidence was admissible under the identity exception in Indiana Evidence Rule 404(b). Caldwell filed a motion in limine, seeking to exclude, among other things, "[a]ny discussion of the traffic stop on September 17, 2003 involving [him]." *Id.* at 53. A hearing was held, and the parties discussed the events leading up to the traffic stop. Specifically, fifty-seven days after the break-in and attempted rape at L.C.'s house, sixty-year-old J.H. reported to the police at 11:06 p.m. that when she was home alone at 3309 Mellwood Avenue, a black male was in her backyard looking in her window but left when she turned on the lights. *See* Tr. p. 70-97. J.H. lived approximately twelve or thirteen houses from L.C. Minutes after the report, the police pulled over Caldwell, who was driving away from the area at "a

---

[1] The State originally charged Caldwell with four counts; however, in September 2014 the State amended Counts I and II and dismissed Count III (Class B felony aggravated battery) and Count IV (Class D felony criminal confinement). *See* Appellant's App. p. 56-57.

[2] The incident actually began on September 16 but continued into the early-morning hours of September 17. For consistency purposes, we refer to it as the September 17, 2003 incident.

fairly accelerated speed," for an expired license plate. *Id.* at 584. The police noticed that Caldwell was sweating, the bottom of his pant legs were wet, and although he was wearing dry shoes, he had a pair of wet shoes covered in grass clippings in the backseat of his car. Caldwell told the police that he was in the area visiting a female friend, who lived at University Woods apartments. Although Caldwell's route did not make sense to the police, they contacted the female, who confirmed that Caldwell had recently been staying with her and that they were romantically involved. The police took an audiotaped statement from Caldwell on the scene, during which Caldwell explained that he was initially wearing tennis shoes but later changed into different shoes after he cut through a yard and park while visiting his female friend. Caldwell was not arrested for the peeping incident at J.H.'s house and was allowed to leave. Because Caldwell's car was towed due to the expired license plate, he left the scene on foot in the direction of University Woods.

[10] On the first day of trial, the trial court ruled that the September 17, 2003 incident was admissible. The court reasoned:

> [J.H.'s] home is twelve (12) to thirteen (13) houses over from the victim in our instant case, [L.C.'s] home. The homes are in very close proximity, about a block or block and a half away from each other. [T]he traffic stop incident or the peeping incident at [J.H.'s] home was fifty-seven (57) days after the attempted rape of [L.C.] and occurred at or near the same time in the evening. Both women were of similar age, fifty-six (56) to sixty (60). Both were Caucasian. Both were home alone. I find that to be a similar victim profile in this matter. The mode of entry into [L.C.'s] home was through a back window. The Defendant was

seen looking into a back window of [J.H.'s] home and a ladder was found leaning up against a bedroom window. So I find there was a similar method of entry or peeping in the second matter.

*Id.* at 109. Based on these facts, the court concluded: "I find the specific features found in the uncharged event sufficiently similar, a type of signature plan unique and unusual in time, place and event to the charged crime that demonstrates a signature of this Defendant showing his modus operandi." *Id.* at 110-11. And because L.C. could not identify her attacker, the court found that the probative value of this evidence outweighed its prejudicial effect. *Id.* at 111.

[11] During trial, the State, over Caldwell's objection, introduced evidence of the September 17, 2003 incident through two police officers. Before the first police officer, Detective Gregory Pennell, testified, the trial court admonished the jury that evidence of the September 17, 2003 incident could be used for identification purposes only and Caldwell was not on trial for that incident. *Id.* at 210. Detective Pennell then testified briefly about the September 17, 2003 incident. *See id.* at 210-12. And before the second police officer, Officer Shawn Kesling, testified, the court repeated the same admonishment to the jury. *Id.* at 576-77. Officer Kesling then testified in great depth about the September 17, 2003 incident. *See id.* at 578-644.

[12] The State also presented testimony from Joanna Johnson, a forensic DNA analyst with the Indiana State Police Laboratory. Specifically, Johnson testified that the DNA from the blood on L.C.'s laundry-room blinds was "consistent

with Anthony Caldwell . . . and would be expected to occur once in greater than eight trillion (8,000,000,000,000) unrelated individuals." *Id.* at 483-84.

[13] During closing argument, the State discussed the September 17, 2003 incident and argued that the similarities between the two incidents showed Caldwell's "identity" and "signature." *See id.* at 670-76. Specifically, the State argued:

> [T]his is the way these people operate that are predators, that prey [on] females that are older and that they look in the windows, they scope out the situation and they see who they can do this to. And if not for the report [and] what went on, [J.H.] would've been the next victim out there on Mellwood.

*Id.* at 676. The jury found Caldwell guilty of Class A felony burglary and Class A felony attempted rape, and the trial court sentenced him to fifty years for each count, to be served consecutively, for an aggregate term of 100 years.

[14] Caldwell now appeals.

# Discussion and Decision

[15] Caldwell raises two issues on appeal. First, he contends that the trial court abused its discretion in admitting evidence of the September 17, 2003 incident under Evidence Rule 404(b). Second, he contends that the enhancements to his burglary and attempted-rape convictions violate the common-law prohibition against double jeopardy.

# I. Evidence Rule 404(b)

[16] First, Caldwell contends that the trial court abused its discretion in admitting evidence of the September 17, 2003 incident under Evidence Rule 404(b). A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its ruling only on a showing of abuse of discretion. *Thompson v. State*, 15 N.E.3d 1097, 1101 (Ind. Ct. App. 2014), *reh'g denied*. When reviewing a decision under an abuse-of-discretion standard, we will affirm if there is any evidence supporting the decision. *Id.*

[17] Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence Rule 404(b)(2).

[18] The law governing the admissibility of specific-acts evidence for "another purpose" requires a trial court to make three findings. *Camm v. State,* 908 N.E.2d 215, 223 (Ind. 2009), *reh'g denied*. First, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. *Id.* Second, the court must determine that the evidence of the crime, wrong, or other act is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Last, the court must balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Id.*

[19]     Caldwell first argues that the State failed to sufficiently connect him to the peeping incident at J.H.'s house. There must be sufficient proof from which a reasonable jury could find the uncharged conduct proven by a preponderance of the evidence. *Id.* at 224; *Clemens v. State*, 610 N.E.2d 236, 242 (Ind. 1993), *reh'g denied*. Direct evidence that the defendant perpetrated the similar act is not required; rather, "[s]ubstantial circumstantial evidence of probative value" is sufficient. *Clemens*, 610 N.E.2d at 242. In addition, testimony by the victim of the similar act is not required. *Id.* If the trial court finds the threshold showing has been met, then it properly admits the evidence and leaves to the jury the task of assessing its persuasive value. *Camm*, 908 N.E.2d at 224.

[20]     Here, the State did not present any direct evidence connecting Caldwell to the peeping incident at J.H.'s house. J.H. never identified Caldwell as the perpetrator. Instead, Officer Kesling testified that Caldwell matched the description given by J.H., which was a black male with short hair wearing gray or beige clothing. Tr. p. 581; *see also* State's Ex. 42 (photograph of Caldwell taken during the September 17, 2003 traffic stop). Officer Kesling also found it suspicious that Caldwell was sweating, there was a pair of wet shoes covered in grass clippings in his car, and the bottom of his pants legs were wet. However, Caldwell admitted that he had recently cut through a yard and park while visiting a female friend and then changed his shoes afterwards. And although Officer Kesling doubted Caldwell's reason for being in the area because it was not the "most rapid route" that the police would take to get to University Woods apartments, Tr. p. 606, Officer Kesling later checked with Caldwell's

female friend, who confirmed that they were romantically involved. Finally, Officer Kesling did not arrest Caldwell in connection with the peeping incident at J.H.'s house. In fact, Officer Kesling—who had been instructed to be on heightened alert in that area due to the attempted rape of L.C. almost sixty days earlier—did not recall whether he even reported this stop to any detectives. *Id.* at 623. Although the evidence the State presented to connect Caldwell to the September 17, 2003 incident is circumstantial, we find that it is not "substantial" circumstantial evidence from which a reasonable jury could find the uncharged conduct proven by a preponderance of the evidence. This is so despite the great lengths the State went to during Caldwell's trial to prove that he was the one who looked in J.H.'s window. Because the State failed to sufficiently connect Caldwell to the peeping incident at J.H.'s house, we conclude that the trial court abused its discretion in admitting evidence of the September 17, 2003 incident.

[21] Caldwell also argues that the trial court abused its discretion in admitting evidence of the September 17, 2003 incident under the identity exception in Evidence Rule 404(b)(2). The identity exception was "crafted primarily for 'signature' crimes with a common modus operandi." *Thompson v. State*, 690 N.E.2d 224, 234 (Ind. 1997). The exception's rationale is that the crimes, or the means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them. *Id.*; *see also Lafayette v. State*, 917 N.E.2d 660, 666 n.5 (Ind. 2009). Crimes that are only "generally similar" do not qualify under this exception. *Berry v. State*, 715 N.E.2d 864, 867

(Ind. 1999). Rather, the crimes must be "strikingly similar." *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003).

[22] We agree with Caldwell that the attempted rape of L.C. and the peeping incident at J.H.'s house are generally similar, but not strikingly similar. *Allen v. State*, 720 N.E.2d 707 (Ind. 1999), illustrates just how similar two crimes must be in order to constitute a "virtual signature." In *Allen*, the victim, Nikita Jackson, was found dead behind a business on the west side of Indianapolis with glue residue on her arms, legs, and from ear to ear, indicating that she had been bound with duct tape. In Nikita's bedroom, the police found a note with Allen's pager number and the name "Play."

[23] During the investigation of Nikita's murder, Allen was arrested for an attack on Melanie Franklin and charged with criminal deviate conduct, rape, confinement, and robbery. Melanie claimed that she met Allen at a restaurant, he introduced himself as "Play," and they exchanged pager numbers. Then, when she went to Allen's house for a date, he threatened her with a box cutter, bound her hands with duct tape, threatened to bind her legs and mouth if she struggled, and raped her twice. The jury found Allen not guilty of robbery and criminal deviate conduct and hung on rape and confinement.

[24] The police concluded that the two crimes were similar: both Nikita and Melanie were bound with duct tape and sexually assaulted, and both had Allen's pager number and knew him as "Play." Accordingly, in Nikita's case, the State charged Allen with murder and criminal deviate conduct. Then

during trial, the trial court allowed the State to introduce evidence of Melanie's assault under the identity exception in Evidence Rule 404(b) in order to prove that Allen was the perpetrator in Nikita's case.

[25] On appeal, the Indiana Supreme Court found that the trial court did not abuse its discretion in admitting evidence of Melanie's assault under the identity exception in Evidence Rule 404(b). Specifically, the evidence showed that both victims were black teenage girls and the crimes occurred in the same neighborhood within two months of each other. Melanie knew Allen as "Play," and the police found a note in Nikita's bedroom with Allen's pager number and the name "Play." Both incidents involved anal probing or penetration, and both victims were bound with duct tape, which the Supreme Court found to be "relatively rare" in sexual-assault cases. *Id.* at 712. The Court said that even if it would have reached a different result had it tried the case, the admission of evidence of Melanie's assault in Nikita's case was not an abuse of discretion. *Id.*

[26] When comparing this case to *Allen*, it is apparent that the crimes in *Allen* involving Nikita and Melanie are more similar and unique than the crimes in this case involving L.C. and J.H. Although in both this case and *Allen* the victims were similar and the crimes occurred in the same area within two months of each other, there are additional facts in *Allen* that make those crimes strikingly similar. That is, Melanie knew Allen as "Play," and the police found a note in Nikita's bedroom with Allen's pager number and the name "Play." Both incidents involved anal probing or penetration, and both victims were

bound with duct tape, which our Supreme Court found to be relatively rare in sexual-assault cases.

[27] In this case, although the victims were similar and the crimes occurred in the same area within two months of each other, there are stark differences between the crimes. The crimes involving L.C. included a break-in and brutal attempted rape that resulted in a two-day hospital stay for L.C. But there was no break-in at J.H.'s house or sexual assault of J.H. Acknowledging this difference, the State argues that Caldwell "was interrupted in the act of peering in J.H.'s window." Appellee's Br. p. 11. But this is just speculation. *See id.* at 12 (the State noting that Caldwell "probably just committed a misdemeanor trespass offense" in J.H.'s case). Although there are general similarities between the crimes involving L.C. and J.H., the similarities are not striking; therefore, they are not signature crimes. Accordingly, we conclude that the trial court abused its discretion in admitting evidence of the September 17, 2003 incident under the identity exception in Evidence Rule 404(b). *See Browning v. State*, 775 N.E.2d 1222, 1225 (Ind. Ct. App. 2002) (in a case for the attempted rape of Anderson University student A.B., this Court concluded that the trial court abused its discretion in admitting other bad acts of the defendant—mostly masturbation and exposing himself—involving other Anderson University students because "[a]lthough there are certainly striking similarities among the 'other' incidents in question, the same cannot be said when comparing those incidents with the attack upon A.B. In fact, the incident involving A.B. bore

little resemblance to the others. . . . [M]ost significantly, the incident involving A.B. was the only one involving a physical attack.").

[28] But not all errors in admitting evidence under Evidence Rule 404(b) require reversal. Errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015); *see also* Ind. Trial Rule 61. To determine whether an error in the introduction of evidence affected the defendant's substantial rights, we must assess the probable impact of that evidence upon the jury. *Lewis*, 34 N.E.3d at 248.

[29] We find that the trial court's admission of evidence of the September 17, 2003 incident was harmless in light of the DNA evidence connecting Caldwell to the crimes at L.C.'s house. That is, the police found blood on L.C.'s laundry-room blinds. Forensic DNA analyst Johnson testified that the DNA from the blood on the blinds was "consistent with Anthony Caldwell . . . and would be expected to occur once in greater than eight trillion (8,000,000,000,000) unrelated individuals." Tr. p. 483-84; *see also Maryland v. King*, 133 S. Ct. 1958, 1966 (2013) ("The advent of DNA technology is one of the most significant scientific advancements of our era. The full potential for use of genetic markers in medicine and science is still being explored, but the utility of DNA identification evidence in the criminal justice system is already undisputed."). In addition, the trial court admonished the jury before both Detective Pennell and Officer Kesling testified that evidence of the September 17, 2003 incident could be used for identification purposes only and Caldwell was not on trial for

that incident. Just as our Supreme Court found in *Allen*, we too find that the error here was harmless. *See Allen*, 720 N.E.2d at 712 (concluding that even if the trial court abused its discretion in admitting evidence of another crime under the identity exception in Evidence Rule 404(b), the error was harmless in light of the DNA evidence linking Allen to the crime he was on trial for).

# II. Double Jeopardy

[30] Caldwell was convicted of Class A felony burglary and Class A felony attempted rape. The burglary was enhanced to a Class A felony because of "bodily injury" to L.C., and the attempted rape was enhanced to a Class A felony because L.C. was compelled by "deadly force." *See* Appellant's App. p. 57 (charging information); *see also* Ind. Code Ann. §§ 35-43-2-1(2)(A) (West 2012) (burglary can be enhanced to Class A felony "if it results in . . . bodily injury . . . to any person other than a defendant") & 35-42-4-1(b)(1) (West 2012) (rape can be enhanced to Class A felony if "it is committed by using or threatening the use of deadly force"). Caldwell argues that because "both enhancements involve the same 'injurious consequences,'" the enhancements "violate the common law prohibition against double jeopardy." Appellant's Reply Br. p. 9; Appellant's Br. p. 30. He therefore asks us to reduce one of his convictions to a Class B felony.

[31] Under the rules of statutory construction and common law that constitute one aspect of Indiana's double-jeopardy jurisprudence, where one conviction "is elevated to a class A felony based on the same bodily injury that forms the basis

of [another] conviction, the two cannot stand." *Ramon v. State*, 888 N.E.2d 244, 253 (Ind. Ct. App. 2008) (quotation omitted). To remedy such a double-jeopardy violation, a court may reduce the sentencing classification on one of the offending convictions. *Id.* When determining what facts a jury used to establish each element of an offense, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Id.*

[32] In support of his argument, Caldwell relies on *Campbell v. State*, 622 N.E.2d 495 (Ind. 1993).[3] In that case, the defendant was convicted of Class C felony battery (deadly weapon) and Class A felony burglary (serious bodily injury). On appeal, the Indiana Supreme Court noted:

> The Court of Appeals remanded this cause to the trial court with instructions to vacate the class C felony battery conviction and resentence appellant for battery as a class B misdemeanor, because the enhanced felony level of both crimes was based upon the same injurious consequences, violating state and federal double jeopardy prohibitions. We agree. *Although the battery information alleged use of a deadly weapon and the burglary information alleged serious bodily injury, the basis for the elevation of both crimes was the same slashing of Fritz's face.* Appellant was improperly sentenced for battery as a class C felony.

*Id.* at 500 (emphasis added).

---

[3] This Court recently relied on *Campbell* and explained that although *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)*,* appeared to supercede *Campbell*, *Campbell* is "still good law." *Street v. State*, 30 N.E.3d 41, 48 (Ind. Ct. App. 2015), *trans. denied*; *see also Pierce v. State*, 761 N.E.2d 826, 830 n.4 (Ind. 2002).

[33] This Court reached the same result in *Street v. State*, 30 N.E.3d 41 (Ind. Ct. App. 2015), *trans. denied*. In that case, the defendant was convicted of, among other things, Class C felony battery (deadly weapon) and Class A felony burglary (bodily injury). Relying on *Campbell*, this Court held that although the battery information alleged use of a deadly weapon and the burglary information alleged bodily injury, "the basis for the elevation of both crimes was the same injury to the victim—namely, [the victim] being shot by [the defendant's] use of the deadly weapon." *Id.* at 49 (quotation omitted). Accordingly, because the enhancement for battery was "based on the same facts that resulted in [the] enhancement [for burglary]," we reduced the defendant's Class C felony battery conviction to a Class B misdemeanor. *Id.*

[34] In this case, the State enhanced burglary to a Class A felony based on "bodily injury" to L.C.: "a lacerated cheek, bruised and swollen hands, and bruising and swelling to the facial area." Appellant's App. p. 57. And the State enhanced attempted rape to a Class A felony because L.C. was compelled by "deadly force": "[Caldwell] struck [L.C.], drug her to her bedroom, ripped her underwear off, placed a pillow over her face, and touched her vagina." *Id.* At trial, the State presented evidence that after entering L.C.'s house and encountering her in the hall, Caldwell pulled L.C.'s robe over her head and started hitting her in the face as he pushed her back toward the bedroom. Caldwell also ripped off L.C.'s underwear. When they got to the base of the bed in L.C.'s bedroom, Caldwell hit L.C. so hard that she briefly lost consciousness and fell to the floor. Caldwell also put a pillow over L.C.'s face.

When Caldwell touched the outside of L.C.'s vagina with his hand, she exclaimed, "Jesus, Jesus." Caldwell abruptly ended the attack and left. As a result of the attack, L.C. suffered a broken eye socket, a laceration below her right eye, broken bones in her left hand and fingers, and significant bruising and swelling in her face.

[35] During closing argument, the State argued that the burglary "resulted in bodily injury" to L.C., including "severe, significant injuries, lacerations, a broken orbital eye bone, fractures to her hand . . . ." Tr. p. 678-79. And for the deadly force element of attempted rape, the State argued that "serious bodily injury" occurred: "[L.C.] certainly had a broken eye bone, she had lacerations, she had fractures in her hand, she certainly had extreme pain . . . ." *Id.* at 680. The State claimed that this serious bodily injury occurred when Caldwell was "striking her, hitting her, she fell down, [and] the attempt was made to suffocate her with that pillow."[4] *Id.* at 681.

[36] Although burglary was elevated to a Class A felony based on bodily injury to L.C. and attempted rape was elevated to a Class A felony because L.C. was compelled by deadly force, the basis for the elevation of both crimes was the same injury to L.C.—namely, L.C. suffered a broken eye socket, laceration

---

[4] The State argues that the deadly force used during the attempted rape was Caldwell's "act of placing a pillow over L.C.'s face, during which she felt like she could die." Appellant's Br. p. 18. However, given the charging information, the evidence presented at trial, and the State's closing argument—during which it did not confine the deadly force to the act of placing a pillow over L.C.'s face—it is clear that the basis for the elevation of both crimes was the same.

below her right eye, broken bones in her left hand and fingers, and significant bruising and swelling in her face based on Caldwell's use of deadly force. In other words, the deadly force that was used to commit the attempted rape was the very force that gave rise to all of L.C.'s bodily injuries that occurred during the burglary. Because both enhancements were based on the same facts, we reduce Caldwell's burglary conviction to a Class B felony. *See* Ind. Code Ann. 35-43-2-1 (West 2012) (burglary can be enhanced from a Class C felony to a Class B felony if the building or structure is a dwelling). Because we are convinced that the trial court would impose the maximum sentence for Class B felony burglary—just as it did for Class A felony burglary—we reduce Caldwell's burglary sentence from fifty to twenty years.[5] We therefore remand this case to the trial court with instructions to enter a new judgment of conviction and abstract of judgment reflecting that Caldwell's burglary conviction is a Class B felony and his sentence for that count is twenty years, for a new aggregate term of seventy years.

[37] Affirmed in part, reversed in part, and remanded.

Robb, J., and Pyle, J., concur.

---

[5] Indiana Code section 35-50-2-5(a) provides that for a crime committed before July 1, 2014, a person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years.