## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 09 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Keon D. Oakley, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 9, 2019

Court of Appeals Case No.
19A-CR-996

Appeal from the Allen Superior Court

The Honorable David M. Zent, Judge

Trial Court Cause No.
02D05-1810-F3-68

**Bailey, Judge.**

# Case Summary

[1] Keon D. Oakley, Jr. ("Oakley") appeals his convictions for Criminal Confinement, as a Level 3 felony,[1] and Battery, as a Level 5 felony.[2] We affirm in part, reverse in part, and remand with instructions to enter judgment upon the Level 5 felony Battery as a Class B misdemeanor and resentence Oakley accordingly.

# Issues

[2] Oakley presents two re-stated issues for review:

    I.    Whether the State presented sufficient evidence to rebut his claim of self-defense; and

    II.    Whether the Criminal Confinement enhancement and the Battery enhancement were based upon the same facts.

# Facts and Procedural History

[3] In August of 2018, Oakley and T.W. were romantically involved and T.W. was pregnant. On August 6, 2018, T.W. was driving to work with Oakley as a passenger when the two began to argue. Oakley punched T.W. repeatedly and "pinned her up against the car door." (Tr. Vol. I, pg. 49.) At some point, T.W.

---

[1] Ind. Code § 35-42-3-3.

[2] I.C. § 35-42-2-1.

lost consciousness. When she regained consciousness, Oakley was sitting on her and driving her vehicle.

[4] Later, Oakley forced T.W. into the passenger seat and began to drive from Fort Wayne, Indiana to Chicago, Illinois, where he purportedly expected T.W. to comply with his preference that she terminate the pregnancy. Oakley periodically stopped and exited the vehicle but did not allow T.W. to exit; he retained possession of her cell phone and car keys. After arriving at the home of his relatives in Chicago, Oakley returned T.W.'s cell phone to her. However, he maintained close proximity to T.W. He followed her to the bathroom and slept with her car keys in his possession. T.W. refused to cede to Oakley's demand for an abortion, and the pair returned to Fort Wayne.

[5] At approximately 5:00 p.m. on August 7, 2018, T.W. entered a convenience store and asked an employee to call 9-1-1. The employee handed a telephone to T.W. and advised that she could call from the store bathroom. First, T.W. called her mother, Monica Walker ("Walker"); based upon that conversation, Walker called 9-1-1 to report that her pregnant daughter had been kidnapped and beaten. T.W. then called 9-1-1 to report that she was hiding in a store bathroom and requesting help in getting out "without making a scene." (State's Ex. 2.)

[6] Fort Wayne Police Officer Ryan Rockey responded, and was directed to the convenience store bathroom. He encountered T.W., who was "crying, fearful, afraid, and nervous." (Tr. Vol. I, pg. 90.) Officer Rockey observed that T.W.

had numerous injuries, including facial bruises on both cheeks, bruises on both arms, scratches on her back and forehead, and chest bruising. When Walker arrived and transported T.W. to a nearby hospital, Officer Rockey followed them. At the emergency room, Officer Rockey took photographs of T.W.'s injuries and her broken glasses. Officer Anthony Maurer recovered T.W.'s vehicle, unlocked and abandoned at a business location, with the keys inside.

[7] On October 17, 2018, the State charged Oakley with Criminal Confinement, Battery, and Strangulation. Subsequently, the State filed a habitual offender allegation. Oakley was brought to trial on February 19, 2019.

[8] T.W. testified that she had been the aggressor, she had struck Oakley repeatedly, and he had struck her once to defend himself and pushed her against the vehicle door to stop her continued aggression. In light of this testimony, Oakley requested and received a jury instruction on self-defense. The jury found Oakley guilty of Criminal Confinement and Battery, but acquitted him of Strangulation. Oakley was also adjudicated a habitual offender.

[9] On March 12, 2019, Oakley was sentenced to ten years imprisonment for Criminal Confinement, enhanced by thirteen years due to his status as a habitual offender. He was given a consecutive sentence of five years for Battery, resulting in an aggregate sentence of twenty-eight years. Oakley now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[10]     Pursuant to Indiana Code Section 35-42-3-3(a), a "person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement," as a Level 6 felony. The offense is a Level 3 felony when it results in serious bodily injury to a person other than the confining person. I.C. § 35-42-3-3(b). To "confine" a person means to "substantially interfere with the liberty of the person." I.C. § 35-42-3-1.

[11]     Pursuant to Indiana Code Section 35-42-2-1(c)(1), a person commits battery, as a Class B misdemeanor, when he knowingly or intentionally touches another person in a rude, insolent, or angry manner. Battery is a Level 5 offense if it results in bodily injury to a pregnant woman if the batterer knew of the pregnancy. I.C. § 35-42-2-1(g)(3).

[12]     "Bodily injury" is "any impairment of physical condition, including physical pain." I.C. § 35-31.5-2-29. "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of a bodily member or organ; or (5) loss of a fetus." I.C. § 35-31.5-2-292.

[13]     Oakley contends that there is insufficient evidence to support his convictions because witnesses other than T.W. lacked first-hand knowledge of the events, and T.W. testified that Oakley acted in self-defense. When reviewing the

sufficiency of the evidence, we do not reweigh the evidence nor do we judge the credibility of the witnesses. *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001). Considering only the probative evidence and reasonable inferences supporting the verdict, we affirm the conviction if the probative evidence and reasonable inferences therefrom could have allowed the jury to find a defendant guilty beyond a reasonable doubt. *Id.* A conviction can be sustained on the uncorroborated testimony of a victim; however, when a victim recants, a conviction may not rest on a repudiated out-of-court statement unless there is substantial independent evidence of probative value from which the jury could find that the repudiated statement is credible. *Chambless v. State*, 119 N.E.3d 182, 193 (Ind. Ct. App. 2019) (citing *Peckinpaugh v. State*, 447 N.E.2d 576, 581 (Ind. 1983)).

[14] Here, T.W. partially repudiated the out-of-court statements she made during her 9-1-1 call, at the emergency room, and to investigating officers. At trial, she denied that Oakley hit her multiple times with a closed fist or that he had transported her to Chicago against her will. Rather, she claimed that Oakley struck her once in self-defense and pinned her against a vehicle window to stop her aggression.

[15] A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). To prevail on a self-defense claim, the defendant must show that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate

willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998).

[16] When a claim of self-defense is raised and supported by evidence, the State bears the burden of negating at least one of the essential elements. *Wilson*, 770 N.E.2d at 800. If the defendant is convicted despite a claim of self-defense, the conviction will be reversed on appeal only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Id.* "In any event, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense." *Id.* The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any other sufficiency of the evidence claim. *Id.*

[17] In addition to the 9-1-1 calls from T.W. and Walker, the State offered testimony from individuals who had assisted T.W. Walker testified that T.W. called her "panicking" and when Walker arrived at the convenience store, she saw T.W. with a towel over her face, as if attempting to hide her injuries. (Tr. Vol. I, pg. 73.) According to Walker, "[T.W.'s] face looked black and green, her lips was [sic] busted open, she had a black eye." *Id.* at 76. Walker drove T.W. to a hospital, where she was treated by Dr. Nicholas Gould. Dr. Gould testified that T.W. reported having been struck multiple times and rendered unconscious. He diagnosed T.W. as having a concussion and multiple contusions, and he prescribed narcotic pain medication.

[18] Officer Ryan Rockey testified that he took photographs of injuries evident on T.W. when she was admitted to the hospital emergency room. He testified that the photographs admitted into evidence depicted the following injuries to T.W.: brow scratches, an abrasion on the left cheek, a lip abrasion, a chest bruise, a scratch on the back between the shoulder blades, a blood shot left eye, redness around the right eye, and multiple bruises on the upper and lower portions of both arms. According to the testimony of Officer Rockey and Detective Robert Warstler, T.W. initially had reported the following events: Oakley had punched her repeatedly with a closed fist; he pushed her head into a car door and caused her to lose consciousness; and he took possession of the car keys and drove while sitting on T.W.'s unconscious body.

[19] Despite Oakley's insistence that only T.W.'s in-court testimony is worthy of credit, we will not reweigh the evidence or judge witness credibility. *Alkhalidi*, 753 N.E.2d at 627. There is probative evidence from which the jury could have concluded beyond a reasonable doubt that Oakley battered and criminally confined T.W. and that she sustained serious bodily injury. As for the jury's rejection of Oakley's claim of self-defense to legally justify his conduct, there is evidence such that "a reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson*, 770 N.E.2d at 800. T.W., who was pregnant and seeking refuge in a convenience store bathroom, had various injuries over much of her body. The severity of the injuries is inconsistent with a claim that Oakley reasonably feared great bodily harm to

himself and struck a single blow in self-defense. His challenge to the sufficiency of the evidence fails.

## Double Jeopardy – Elevation of Offenses

[20] Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our supreme court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our supreme court held that two or more offenses are the "same offense" in violation of Article 1, Section 14 of the Indiana Constitution, "if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original). Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Id.* at 53.

[21] We consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel in our determination of whether there is a "reasonable possibility" that multiple convictions rest upon the same evidentiary facts. *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008). Here, Oakley argues only that the multiple enhancements of his offenses rest upon the same evidentiary facts.

[22] Frequently discussed under the general rubric of Indiana double jeopardy jurisprudence, we recognize rules of statutory construction and common law that are in addition to the protections afforded by the Indiana Double Jeopardy Clause. *Zieman v. State*, 990 N.E.2d 53, 61 (Ind. Ct. App. 2013). One prohibition is against "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002).

[23] Here, the charging information stated the elements of the crimes but did not include details to indicate which facts supported the individual charges. The State alleged and demonstrated that T.W. had sustained serious bodily injury but did not, in closing, attribute a specific injury to a specific crime. Our review of the evidence discloses that Oakley struck T.W. and pinned her against a vehicle door. Bruises and abrasions were visible to T.W.'s mother, responding police officers, and treating physician. She reported having lost consciousness and was diagnosed with a concussion. But T.W.'s limited testimony, recanting much of her prior reports, did not clarify the causation or timing of a specific injury. The evidence of record does not indicate whether or not T.W. sustained injury during confinement separate from injury during battery. The jury was invited to base both enhancements upon the same evidentiary facts.

[24] Multiple enhancements based upon the same facts cannot stand, and we may reduce one of the offenses to obviate double jeopardy concerns. *Caldwell v. State*, 43 N.E.3d 258, 269 (Ind. Ct. App. 2015). As Battery is the offense having

lesser penal consequences, we elect to revise the Battery offense to a Class B misdemeanor. *See Thompson v. State*, 82 N.E.3d 376, 383 (Ind. Ct. App. 2017) (recognizing that a reviewing court may remedy a violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation).

# Conclusion

[25] There is sufficient evidence to support Oakley's conviction for Criminal Confinement, as a Level 3 felony. However, to obviate double jeopardy concerns, we reduce the Battery conviction to a Class B misdemeanor.

[26] Affirmed in part, reversed in part, and remanded.

Najam, J., and May, J., concur.