## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2016, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ivan A. Arnaez
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William W. Bunner,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 22, 2016<br><br>Court of Appeals Case No.<br>87A04-1603-CR-521<br><br>Appeal from the Warrick Circuit Court<br><br>The Honorable Greg A. Granger, Judge<br><br>Trial Court Cause No.<br>87C01-1508-F2-324 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, William Bunner (Bunner), appeals his convictions for two Counts of dealing in methamphetamine, Level 2 and Level 3 felonies, Ind. Code § 35-48-4-1.1(a)(1), (2)(e)(2); -(d)(1); two Counts of possession of methamphetamine, Level 4 and Level 5 felonies, I.C. § 35-48-4-6.1 (a)(c)(2); -(b)(1); maintaining a common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(2); resisting law enforcement, a Level 6 felony, I.C. § 35-44.1-3-1(a)(3), (b)(1)(A); and possession of paraphernalia, a Class C misdemeanor, I.C. § 35-48-4-8.3(b)(1).

We affirm.

## ISSUES

Bunner raises two issues on appeal, which we restate as follows:

(1) Whether there was sufficient evidence to establish jurisdiction or venue in Warrick County; and

(2) Whether the trial court abused its discretion in admitting certain testimony.

## FACTS AND PROCEDURAL HISTORY

Bunner and Theresa Ritchie (Ritchie) were in a relationship for several years. Around the end of 2014, Ritchie resided with Bunner in his trailer-home at 2833 Old State Road 66 in Newburg, Warrick County, Indiana. By August of 2015, Ritchie moved out of Bunner's trailer and relocated across the street to Jane Schmitt's (Schmitt) house. Because Ritchie was in an on and off

relationship with Bunner, occasionally, Bunner spent some nights with Ritchie at Schmitt's house. Bunner had keys to Schmitt's house.

[5] In January of 2015, the Warrick County Sheriff's Department was investigating Bunner for dealing in methamphetamine. On two different occasions, the officers utilized a confidential informant. Prior to each of the drug buys, phone calls were made to Bunner by the confidential informant to set up the transaction. In the early morning of August 11, 2015, while it was still dark outside, Bunner entered Schmitt's home and woke up Ritchie. Bunner informed Ritchie that he had put some items in the bathroom and mentioned something about an ear box. Bunner also entered Schmitt's bedroom and said something to her. Both women went back to sleep and Bunner was not in the house when they woke up the next morning. Later that morning, several officers from the Warrick County Sheriff's Department arrived at Bunner's trailer to execute a search warrant. Bunner was not home, but the officers detained two other individuals.

[6] When Detective Greg Flowers (Detective Flowers) initially arrived at Bunner's trailer, he observed a gold Ford Ranger parked outside Schmitt's house. However, when he exited Bunner's trailer to get some supplies from his vehicle to continue with his search, he saw that the gold Ford Ranger was no longer there. Over the radio, Detective Flowers heard Detective Tim Pierce (Detective Pierce) state that "he was travelling east bound on State Road 66 behind a gold Ford Ranger." (Tr. p. 51). Detective Flowers abandoned the search and left to track the Ford Ranger. Because there was a lot of radio traffic, Detective

Flowers lost track of Detective Pierce's trail, so he turned his vehicle around and started driving back to Bunner's trailer. Moments later, Detective Flowers saw Bunner, who was driving the gold Ford Ranger, pass him in the opposite direction. Detective Flowers observed that Bunner was yelling something and motioning his hand up and down. Detective Pierce was following behind with his lights and siren activated. Upon seeing this, Detective Flowers spun his vehicle around and again joined in the chase. Bunner eventually stopped his vehicle in a driveway. However, instead of staying inside his vehicle, Bunner exited and started walking toward Detective Pierce who was also exiting his vehicle. Detective Pierce drew his gun, pointed it toward Bunner, and ordered him to lie down on the ground. Bunner refused to comply; instead, Bunner continued approaching Detective Pierce while hollering insults. With the assistance of Detective Flowers and another officer, Bunner eventually complied and was subsequently detained.

[7] At Bunner's trailer, the officers recovered items associated with the sale and use of methamphetamine, including a glass plate with a white crystal-like substance on it, razor blades, glass pipes, cut straws, and several plastic bags with the corners cut off. After searching Bunner's trailer, the officers went to Schmitt's home to talk to Ritchie. Schmitt answered the door and informed the officers that they would need a warrant to search her bedroom space. Ritchie, on the other hand, invited the officers to conduct a limited search of her bedroom. During the search, Ritchie would "open up a drawer and then she'd close it real (sic) quick before [the officers] could actually look in and see [] what's goin'

on." (Tr. p. 205). Because the limited search of Ritchie's bedroom did not yield anything, the officers obtained a warrant to search Schmitt's home. In the bathroom, the officers found an earwax removal kit with a brass tube, as well as a small plastic bag holding approximately 1.61 grams of methamphetamine. In and around the nightstand in Schmitt's bedroom, the officers located a plastic bag containing approximately 7.93 grams of methamphetamine, a digital scale, a coffee filter, glass pipes, approximately four grams of marijuana, a marijuana grinder, and a marijuana smoke pipe. Schmitt claimed that those items did not belong to her. In Ritchie's bedroom, the officers retrieved a cup containing several syringes.

[8]     On August 12, 2015, the State filed an Information, charging Bunner with Count I, dealing in methamphetamine, Ind. Code § 35-48-4-1.1(a)(1), (d)(1), a Level 3 felony; Count II, possession of methamphetamine, I.C. § 35-48-4-6.1(a), (b)(1), a Level 5 felony; Count III, maintaining common nuisance, I.C. § 35-48-4-13(b)(2), a Level 6 felony; Count IV, resisting law enforcement, I.C. § 35-44.1-3-1(a)(3), (b)(1)(A), a Level 6 felony; Count V, possession of marijuana, I.C. § 35-48-4-11(a)(1), a Class B misdemeanor; Count VI, possession of paraphernalia, I.C. § 35-48-4-8.3(b)(1), a Class C misdemeanor; Count VII, dealing in methamphetamine, I.C. § 35-48-4-1.1(a)(1), (2)(e)(2), a Level 2 felony; Count VIII, possession of methamphetamine, I.C. § 35-48-4-6.1(a)(c)(2), a Level 4 felony; and Count IX, possession of marijuana I.C. § 35-48-4-11(a)(1), a Class A misdemeanor. In addition, the State filed an Information alleging Bunner to be an habitual substance offender. On December 21, 2015, the State

amended Counts I and VII by altering the address of the offenses from Bunner's trailer to Schmitt's house.

[9] On January 4 through January 5, 2016, the trial court conducted a bifurcated jury trial. The first phase of the trial involved Counts I through VI. At the close of the evidence, the jury found Bunner guilty of Count I, dealing in methamphetamine, a Level 2 felony; Count II, possession of methamphetamine, a Level 5 felony; Count III, maintaining a common nuisance, a Level 6 felony; Count IV, resisting law enforcement, a Level 6 felony; and Count VI, possession of paraphernalia, a Class C misdemeanor. The jury acquitted Bunner of Count V, possession of marijuana, a Class B misdemeanor. The second phase of Bunner's trial involved Counts VII through IX and his habitual substance offender Count. Because Bunner had indicated that he would plead guilty to the remaining Counts if the jury returned guilty verdicts on Counts I through VI, the State dismissed Count IX, possession of marijuana. Accordingly, the trial court proceeded to conduct a guilty plea hearing for Counts VII and VIII. After the factual basis was established, Bunner pleaded guilty to those Counts, and to being a habitual offender. The trial court subsequently accepted Bunner's guilty plea and set a sentencing hearing for February 5, 2016.

[10] At the sentencing hearing, the trial court merged Bunner's Count I, dealing in methamphetamine, a Level 3 felony; Count II and VII, possession of methamphetamine, Level 4 and Level 5 felonies; with Count VII, dealing in methamphetamine, a Level 2 felony. Accordingly, the trial court sentenced

Bunner to an executed twenty-five-year sentence. Bunner's Count VII dealing in methamphetamine conviction was enhanced by fifteen years due for the habitual offender adjudication. In addition, the trial court sentenced Bunner to concurrent sentences of two years for resisting law enforcement, one year for maintaining a common nuisance, and sixty days for possession of paraphernalia. In sum, Bunner received an aggregate sentence of forty years.

[11]     Bunner now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[12]     Bunner contends there was insufficient evidence to establish either jurisdiction or venue in Warrick County, Indiana. Our standard for reviewing sufficiency of the evidence claims is well settled. *Harrison v. State*, 707 N.E.2d 767, 788 (Ind. 1999). We do not reweigh the evidence or judge the credibility of the witnesses, and it lies within the jury's exclusive province to weigh conflicting evidence. *Robinson v. State*, 699 N.E.2d 1146, 1148 (Ind. 1998). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Tobar v. State*, 740 N.E.2d 109, 111-12 (Ind. 2000).

### A. *Jurisdiction*

[13]     Jurisdiction is considered an element of the offense. *Sundling v. State*, 679 N.E.2d 988, 991 (Ind. Ct. App. 1997). Indiana has jurisdiction if either the

conduct that is an element of the offense or the result that is an element occurs in Indiana. I.C. § 35-41-1-1(b)(1); *McKinney v. State*, 553 N.E.2d 860, 862 (Ind. Ct. App. 1990), *trans. denied*. Jurisdiction must be proven beyond a reasonable doubt. *Alkhalidi v. State*, 753 N.E.2d 625, 628 (Ind. 2001).

[14] In establishing the geographical location of Bunner's offenses, the State questioned Ritchie where she lived, and Ritchie stated that in 2014 she resided with Bunner at 2833 Old State Road 66, however, she indicated that she relocated in August of 2015 and was living with Schmitt. Schmitt testified that for the past fourteen years, she lived at "2844 Old State Road 66 in Newburg." (Tr. p. 156). Schmitt stated that Bunner's trailer was located across the street from her house. In addition, Detective Flowers testified on August 11, 2015, he was assisting other officers in executing a search warrant at Bunner's trailer in Newburgh. Detective Flowers indicated that Exhibits 1, 2, and 3 depicted Bunner's trailer and he confirmed that the trailer's address was 2833 Old State Road 66.

[15] In his appellate brief, Bunner now claims that "not a single witness mentioned the State or county where the charged acts occurred." (Appellant's Br. p. 19). In support of his claim, Bunner directs us to the State's witness testimonies, and he points out that they all failed to mention the specific county where the charged acts occurred.

[16] Our courts regularly take judicial notice of verifiable facts of geography. *See Page v. State*, 395 N.E.2d 235, 237 (Ind. 1979) (overruled on other grounds by

*Rhyne v. State*, 446 N.E.2d 970 (Ind. 1983)) ("Facts of geography can be taken as true through judicial notice by a court without actual direct evidence on the subject."). Further, Indiana courts have taken judicial notice of the whereabouts of Indiana counties, distances between cities, that a given county is in Indiana, and that a given city is in a given county. *See Southern Ry. Co. of Ind. v. Ingle*, 223 Ind. 271, 60 N.E.2d 135 (1945) (where the court took judicial notice that Evansville is in Vanderburgh County, which adjoins the county in which the trial was held). Based on the foregoing, we take judicial notice of the following: Newburgh is a town in Warrick County, Indiana, and is located just east of Evansville, Indiana. At Bunner's jury trial, Schmitt stated that for fourteen years, she lived at 2844 Old State Road 66 in Newburg, and Bunner lived across the street.

[17] Moreover, the record shows that *the elements* of Bunner's charged offenses occurred in Newburg, Warrick County, Indiana. *See McKinney*, 553 N.E.2d at 862 (holding that Indiana has jurisdiction if either the conduct that is an element of the offense or the result that is an element occurs in Indiana). At the first phase of his trial, Bunner was convicted of a Level 3 felony dealing in methamphetamine and a Level 5 felony possession of methamphetamine. Based on those convictions, during the second phase, Bunner pleaded guilty to a Level 2 felony dealing in methamphetamine and a Level 4 felony possession of methamphetamine. Indiana Code section 35-48-4-1.1, dealing in methamphetamine, provides that a person who:

> (1) knowingly or intentionally:

(A) manufactures;
(B) finances the manufacture of;
(C) delivers; or
(D) finances the delivery of;
methamphetamine, pure or adulterated; or

(2) possesses, with intent to:

(A) manufacture;
(B) finance the manufacture of;
(C) deliver; or
(D) finance the delivery of;
methamphetamine, pure or adulterated;

commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e).

(b) A person may be convicted of an offense under subsection (a)(2) only if:

(1) there is evidence in addition to the weight of the drug that the person intended to manufacture, finance the manufacture of, deliver, or finance the delivery of the drug; or
(2) the amount of the drug involved is at least twenty-eight (28) grams.

(c) The offense is a Level 4 felony if:

(1) the amount of the drug involved is at least one (1) gram but less than five (5) grams; or
(2) the amount of the drug involved is less than one (1) gram and an enhancing circumstance applies.

(d) The offense is a Level 3 felony if:

(1) the amount of the drug involved is at least five (5) grams but less than ten (10) grams; or
(2) the amount of the drug involved is at least one (1) gram but less than five (5) grams and an enhancing circumstance applies.

(e) The offense is a Level 2 felony if:

(1) the amount of the drug involved is at least ten (10) grams;
(2) the amount of the drug involved is at least five (5) grams but less than ten (10) grams and an enhancing circumstance applies; or (3) the person is manufacturing the drug and the manufacture results in an explosion causing serious bodily injury to a person other than the manufacturer.

[18]     As for possession of methamphetamine, Indiana Code section 35-48-4-6.1 provides, in part:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Level 6 felony, except as provided in subsections (b) through (d).

(b) The offense is a Level 5 felony if:

(1) the amount of the drug involved is at least five (5) but less than ten (10) grams; or
(2) the amount of the drug involved is less than five (5) grams and an enhancing circumstance applies.

(c) The offense is a Level 4 felony if:

(1) the amount of the drug involved is at least ten (10) but less than twenty-eight (28) grams; or
(2) the amount of the drug involved is at least five (5) but less than ten (10) grams and an enhancing circumstance applies.

[19] Following the Warrick Sherriff's Department investigation of Bunner for dealing in methamphetamine in 2015, several officers went to Bunner's trailer to conduct a search on the morning of August 11, 2015. Inside Bunner's trailer, the officers found numerous items associated with the use and sale of methamphetamine. The officers then walked over to Schmitt's house, and after they obtained a warrant, they searched her entire house. In the bathroom, the officers found an earwax removal kit with a brass tube, as well as a plastic bag holding 1.61 grams of methamphetamine. In Schmitt's bedroom, the officers found a plastic bag containing approximately 7.93 grams of methamphetamine, a digital scale, a coffee filter, and glass pipes. On top of Ritchie's dresser, there was a styrofoam cup with syringes. At Bunner's jury trial, Ritchie testified that the drugs and the items recovered in Schmitt's home belonged to Bunner.

[20] With respect to Bunner's other offenses, *i.e.*, maintaining a common nuisance, resisting law enforcement, and possession of paraphernalia, we also find that there was sufficient evidence that elements of the offenses occurred in Warrick County. To convict Bunner of maintaining a common nuisance, pursuant to Indiana Code section 35-45-1-5(b)(2), the State was required to prove that he (1) knowingly or intentionally maintained a building or structure (2) that was used one or more times by persons to unlawfully sell, deliver, or finance the delivery of controlled substances. In order to maintain a place, one must have control

over it. *See Jones v. State*, 807 N.E.2d 58, 66 (Ind. Ct. App. 2004), *trans. denied*. Here, drugs and other items associated in the sale and use of a controlled substance were recovered in Bunner's trailer and Schmitt's house. Schmitt denied that the drugs found in her house belonged to her; Ritchie claimed that the drugs belonged to Bunner. Furthermore, the State presented evidence that Bunner had the keys to Schmitt's house and occasionally spent some nights at Schmitt's house. Based on the foregoing, we conclude there was sufficient evidence of Bunner maintaining a common nuisance in Warrick County.

[21] With regard to Bunner's offense of resisting law enforcement, I.C. § 35-44.1-3-1(a)(3), (b)(1)(A) (2015), a Level 6 felony, the State was required to prove beyond a reasonable doubt that Bunner knowingly or intentionally fled from a law enforcement officer after an officer had, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself and ordered Bunner to stop. Here, the evidence shows that after Bunner fled from the scene, Detectives Pierce and Flowers drove behind Bunner with their lights and sirens activated, but Bunner failed stop.

[22] Lastly, with respect to Bunner's possession of paraphernalia, the State was required to prove that Bunner knowingly possessed syringes and that he intended to use them to test the "strength, effectiveness or purity of . . . a controlled substance." I.C.§ 35-48-4-8.3(a)(2). A "controlled substance" includes methamphetamine. I.C. §§ 35-48-1-9; -2-4(d)(13). In the charging information, the State alleged that Bunner knowingly possessed pipes or syringes which he intended to use for introducing a controlled substance into

his body. The record shows that on top of Ritchie's closet, the officers found a styrofoam cup that contained syringes. At Bunner's trial, Ritchie testified that Bunner had brought the syringes one evening and had asked her to "get high with him." (Tr. p. 102). Also, inside Bunner's trailer, the officers also recovered pipes and a glass plate with a white crystal-like substance on it.

[23] In sum, we find that there was sufficient evidence to conclude that Bunner's offenses were committed in Warrick County, Indiana. Specifically, there was enough evidence that the items found in Bunner's trailer and Schmitt's home were associated in the use and sale of methamphetamine. In addition, there was sufficient evidence that Bunner's other crimes, *i.e.*, maintaining a common nuisance, resisting law enforcement, and possession of paraphernalia, occurred in Warrick County. Bunner's argument to the contrary is simply an invitation to reweigh the evidence in his favor, which we must decline.

## B. *Venue*

[24] As for venue, it is well established that the right to be tried in the county in which an offense was committed is a constitutional and a statutory right. IND. CONST. Art. I, § 13; I.C. § 35-32-2-1(a); *Alkhalidi*, 753 N.E.2d at 628. Unlike jurisdiction, venue is not an element of the offense. *Id*. Accordingly, although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proven beyond a reasonable doubt. *Id*. Any error relating to venue is waived on appeal if the defendant fails to make an objection before or during trial. *Smith v. State*, 809 N.E.2d 938, 942 (Ind. Ct. App. 2004), *trans. denied*; *Neff v. State*, 915 N.E.2d 1026, 1032 n.3 (Ind. Ct. App.

2009) (noting that "venue may be challenged at any time before a verdict or guilty finding"), *trans. denied*.

[25] Here, prior to and during the trial, Bunner made no objection to being tried in Warrick County. He did not challenge the venue of the case at any stage of the proceedings below and raises this issue now for the first time on appeal. "Although the Constitution guarantees a person charged with [a] crime a right to be tried in the county in which the crime was committed, this is a right personal to the defendant which he waives by failing to object." *Critchlow v. State*, 346 N.E.2d 591, 597 (Ind. 1976). We therefore conclude that Bunner has waived review of this argument on appeal.

## II. *Admission of Evidence*

[26] Lastly, Bunner claims that the trial court abused its discretion in admitting Ritchie's testimony relating to a drug sale he had initiated the day before he was arrested for the instant offenses.

[27] We review the admission of evidence for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a defendant's

substantial rights, we assess the probable impact of the evidence on the jury. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000).

[28] Prior to trial, Bunner sought a motion in limine to prohibit the State from introducing Ritchie's testimony regarding prior acts of drug dealing in which she participated with Bunner. At the close of the parties' arguments on the motion, the trial court concluded that Ritchie could testify about a single drug deal that she arranged at Bunner's command on August 10, 2015, a day before the search warrants were executed. At trial, Ritchie was questioned regarding the phone call she had made on behalf of Bunner to Tim Haggard (Haggard) on August 10, 2015. Bunner, through counsel, again objected to the admission of Ritchie's testimony, but the trial court permitted the testimony under Ind. Evidence Rule 404(b).

[29] Indiana Evidence Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Indiana Evidence Rule 404(b)(2) allows the introduction of evidence of other crimes and wrongs for purposes other than proving propensity to commit the charged crime, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To be admissible under this exception, the evidence must be relevant to some matter other than the defendant's propensity to commit crimes and the prejudicial effect of the evidence must not substantially outweigh its probative

value pursuant to Indiana Evidence Rule 403. *Thompson v. State*, 15 N.E.3d 1097, 1102 (Ind. Ct. App. 2014).

[30] At Bunner's trial, Ritchie was permitted to testify as follows:

> [STATE]: I'm gonna take you back, uh, to August 10[], 2015.
>
> [RITCHIE]: Yes.
>
> [STATE]: . . . did you have an occasion to . . . speak to someone on the phone that day?
>
> [RITCHIE]: I did.
>
> [STATE]: And what was that in regards to?
>
> [RITCHIE]: . . . it was in regards to [Bunner] meeting someone else later that day.
>
> [STATE]: Okay. And who was this . . . person you were talking to on the phone?
>
> [RITCHIE]: . . . Haggard.
>
> ****
>
> [STATE]: . . . [W]hy were they meeting?
>
> [RITCHIE]: . . . [Haggard] was gonna pay [Bunner].
>
> [STATE]: For?
>
> [RITCHIE]: For, uh . . . -

[BUNNER'S COUNSEL]: To which we're gonna object, Your Honor. 404(b) grounds. . . .

COURT: Okay . . . the objection [is]overruled.

**CONTINUATION OF DIRECT EXAMINATION:**

[RITCHIE]: I'm sorry?

[STATE]: He was gonna meet [Bunner] for what?

[RITCHIE]: Uh, . . .[Haggard] was gonna pay [Bunner] the money he owed him.

[STATE]: For?

[RITCHIE]: For dope.

[STATE]: For dope. And when you say dope what do you mean by that?

[RITCHIE]: For meth.

[STATE]: Okay. Did you speak to [] Haggard on the phone or did [Bunner] speak to him?

[RITCHIE]: I did.

****

[STATE]: Okay. And was there any conversation about how much money, how much drugs[?]

[RITCHIE]: Honestly I don't remember if there was a specific amount mentioned at that time.

[STATE]: Okay. But you knew at that time when you were on the phone with [] Haggard you were setting up a drug deal.

[RITCHIE]: Yes, ma'am.

[STATE]: Okay. Did you see [] Haggard that day?

[RITCHIE]: No.

[STATE]: Did you see. . .[Bunner] with . . . Haggard that day?

[RITCHIE]: No. [Bunner] went to meet him. I [] wasn't involved.

[STATE]: . . . [B]ut you did not go and you [] never saw whether money exchanged hands for drugs?

[RITCHIE]: Not that day.

COURT: Let me at this point . . . admonish the jury that this witness is testifying regarding . . . a . . . situation involving [Bunner]. Uh, she's testified that there was money paid-owed for dope. You are admonished you may not use this testimony, uh, concerning that type of act as evidence of [] Bunner's general character. Okay? You're only to consider that [] evidence as the State is offering it for motive, intent or identification so you cannot use that testimony regarding the transaction relating to what would be regarded as the [Bunner's] character. Okay?

(Tr. pp. 95-98).

[31] In evaluating whether the trial court abused its discretion regarding the admissibility of 404(b) evidence, we must determine whether the evidence of prior bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged acts. *Bishop v. State*, 40 N.E.3d 935, 951 (Ind Ct. App. 2015), *trans. denied*. Second, we must balance the probative value of such evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403.

[32] Here, it is apparent from the trial court's statements that the evidence of Bunner's drug deal was admitted to show Bunner's motive in dealing in methamphetamine. Evidence of uncharged misconduct which is probative of the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Rule 404. The State argues, and we agree, that Ritchie's testimony with respect to the drug deal she had helped to organize for Bunner, is probative of Bunner's motive to sell the methamphetamine recovered during the search. *Sanders v. State,* 724 N.E.2d 1127, 1131 (Ind. Ct. App. 2000). Accordingly, we find that the trial court did not abuse its discretion when it permitted Ritchie's testimony.

[33] Regardless of its admissibility, any error in the admission of evidence is to be disregarded unless it affects the substantial rights of a party. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable impact on the factfinder. *Id*. The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing

court that there is no substantial likelihood that the challenged evidence contributed to the conviction. *Id.* The State presented substantial independent evidence of Bunner's guilt with regard to his charged offenses, and we are satisfied that there is no substantial likelihood that Ritchie's testimony regarding the uncharged incident involving Bunner, contributed to his convictions. Thus, any error in the admission of Ritchie's testimony was harmless.

## CONCLUSION

Based on the foregoing, we conclude that there was sufficient evidence to establish jurisdiction in Warrick County in relation to Bunner's offenses, and the trial court did not abuse its discretion in admitting certain evidence pursuant to Indiana Evidence Rule 404(b).

Affirmed.

Bailey, J. and Barnes, J. concur